UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACK MOUNTAIN CENTER, L.P., and TIMOTHY HAIDINGER<br><br>Plaintiff,<br><br>v.<br><br>FIDELITY AND DEPOSIT COMPANY OF MARYLAND<br><br>Defendants. | CASE NO. 17cv1776 JM(JLB)<br><br>ORDER DENYING MOTION TO DISMISS |

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Fidelity and Deposit Company of Maryland ("Fidelity") moves to dismiss the action on grounds that the complaint fails to adequately allege that Fidelity owed a duty to defend Plaintiffs Black Mountain Center, L.P. ("BMC") and its president, Timothy Haidinger ("Haidinger"), in the underlying state court action. Plaintiffs oppose the motion. Pursuant to Local Rule 7.1(d)(1), the court finds the matters presented appropriate for decision without oral argument. For the reasons set forth below, the court denies the motion to dismiss.

## BACKGROUND

On September 1, 2017, Plaintiffs commenced this diversity bad faith insurance action by alleging two claims for breach of contract (failure to pay defense and settlement costs) and a claim for tortuous breach of the implied covenant of good faith and fair dealing.

1

Plaintiffs bring this action by alleging that Fidelity wrongfully and unreasonably refused to defend them against a claim of constructive eviction. Plaintiffs seek an award of punitive damages.

BMC owns the Haidinger Center, a four building, 3.89 acre site located in San Diego, CA. BMC leases space to tenants for professional, retail, commercial, and light manufacturing purposes. Fidelity, a Maryland corporation, provided business and liability insurance coverage for the property. On May 28, 2014, BMC entered into a lease with Victoria DuPont and Jeff Droege ("Tenants") for the express purpose to operate a medical marijuana dispensary.

Prior to executing the lease, Haidinger allegedly informed Tenants that they could operate the dispensary upon receipt of a Conditional Use Permit ("CUP") from the City of San Diego. Haidinger also represented that he would sign the CUP, a prerequisite for the issuance of a final CUP. After expending substantial time, money, and resources, on March 12, 2015, the San Diego Planning Commission approved the CUP. On June 11, 2015, DuPont met with property owner Tim Haidinger to

> discuss the required signatures for the CUP and implementing the conditions imposed by the City's Planning Commissioners. Haidinger has refused to sign the CUP and notified DuPont that he is terminating the Lease effective July 11, 2015.

(July 10, 2015 Tender Letter, Compl. Exh. A 003).

On July 10, 2015, Haidinger received a demand letter from Tenants requesting the sum of $500,000 in damages or, alternatively, a revised lease that would permit them to operate a marijuana dispensary. (Compl. ¶ 10). The demand letter identified potential claims for intentional misrepresentation, interference with prospective economic advantage, and breach of contract.

**The Policy**

Fidelity, a Maryland corporation, issued a Premier Building Owners Package Policy ("Policy") to BMC and Mr. Haidinger, designated by policy number 2761644, and in effect between December 4, 2014 and December 4, 2015 (the "Policy"). The Policy has applicable

2

limits of $5,000,000 per occurrence or act, and a deductible of $10,000. Among other things, the Policy provided a defense and indemnity against a claim for personal injury that arises out of the ownership, maintenance or use of an insured premises as a rental property or as vacant land. (Compl. ¶ 6). The Policy provided bodily injury and property damages coverage under the premises liability provisions; and personal injury and advertising damages coverage under the personal injury and advertising injury provisions. The Policy also provided the following exclusions:

> A. arising out of oral or written publication of material if done by or at the direction of any insured with knowledge of its falsity.
> D. arising out of fraud committed by any insured.
> F. caused by the willful act of any insured but sums awarded as damages because of negligence are not excluded.

(Ward Decl. Exh A).

The parties primarily focus on the wrongful eviction provision in the Policy. The Policy also defined personal injury as follows:

> 18. Personal Injury means injury other than bodily injury arising out of one or more of the following acts:
> c. wrongful entry into premises that a person or organization occupies or wrongful eviction of a person or organization from premises that the person or organization occupies.

(Ward Decl. Ex. "A" at p. 53; Compl. 8). The Policy does not define the term "wrongful eviction."

**Fidelity's First Denial of Coverage**

Plaintiffs tendered the pre-suit demand to Fidelity and, on July 29, 2015, Fidelity denied the claim stating that Ms. DuPont did not base any theory of recovery on any injury arising out of any act within the definition of personal injury in the Policy. (Compl. ¶ 15). Fidelity also indicated that the claims were barred by the personal injury, fraud, and willful act exclusions in the Policy.

**The State Court Action**

On August 14, 2015, Tenants commenced an action against Plaintiffs in San

3

Diego Superior Court. The complaint alleged that Plaintiffs denied Tenants' quiet enjoyment of the property and breached the lease. Tenants sought damages in the amount of $3,200,000, plus interest and attorneys' fees. After the denial of coverage, Plaintiffs funded the defense costs and, ultimately, the settlement of Tenants' claims.

On April, 25, 2016, Tenants provided Plaintiffs with a Notice of Termination of Lease. The Notice stated that Plaintiffs had frustrated the express purpose of the Lease, breached the covenant of quiet enjoyment, and constructively evicted Tenants from the property. (Compl. ¶ 20). The Tenants represented that they would pay rent through the end of April 2016 and surrender possession on or about May 9, 2016.

**Fidelity's Second Denial of Coverage**

On March 10, 2016, after receipt of the second amended complaint, Plaintiffs retendered the defense to Fidelity. On April 18, 2017, Fidelity responded that neither the original demand letter nor the second amended complaint potentially seek damages covered by the Fidelity policy, including under the wrongful eviction provision. (Compl. Exh. D at 020).

## DISCUSSION

**Legal Standards**

Fed.R.Civ.P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) dismissal is proper only in "extraordinary" cases. United States v. Redwood City, 640 F. 2d 963, 966 (9th Cir. 1981). Courts should grant 12(b)(6) relief only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F. 2d 696, 699 (9th Cir. 1990). Courts should dismiss a complaint for failure to state a claim when the factual allegations are insufficient to raise a right to relief above the speculative level. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (the complaint's allegations must "plausibly suggest[]" that the pleader is entitled to relief); Ashcroft v. Iqbal, 556 U.S. 662 (2009) (under Rule 8(a), well-pleaded facts must do more than permit the court to infer the mere possibility of misconduct). The plausibility standard is not akin to a

'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678. Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The defect must appear on the face of the complaint itself. Thus, courts may not consider extraneous material in testing its legal adequacy. Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1482 (9th Cir. 1991). The courts may, however, consider material properly submitted as part of the complaint. Hal Roach Studios, Inc. v. Richard Feiner and Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

Finally, courts must construe the complaint in the light most favorable to the plaintiff. Concha v. London, 62 F.3d 1493, 1500 (9th Cir. 1995), cert. dismissed, 116 S. Ct. 1710 (1996). Accordingly, courts must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. Holden v. Hagopian, 978 F.2d 1115, 1118 (9th Cir. 1992). However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion. In Re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).

General State Law Insurance Principles

Ordinary rules of contract interpretation apply to insurance contracts. The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. If the contractual language is clear and explicit, it governs. Bank of the West v. Superior Court (Industrial Indemnity Co.), 2 Cal. 4th 1254 (1992). Where exclusions are clear, plain, and conspicuous, they will be enforced. Malcolm v. Farmers New World Life Ins. Co., 4 Cal.App.4th 296, 3045 (1992). If the policy provision is unambiguous, i.e., has only one reasonable construction, it must be interpreted according to this plain meaning. But if a policy provision is ambiguous, the ambiguous terms are resolved in the insureds' favor, consistent with the insureds' reasonable expectations. Id. at 1149 (quoting Safeco Ins. Co. v. Robert S., 26 Cal.4th at p. 761.)

The Court of Appeal succinctly summarized, and distinguished, the duty to defend from the duty to indemnify:

> [A]n insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement. This duty, which applies even to claims that are 'groundless, false, or fraudulent, is separate from and broader than the insurer's duty to indemnify. [T]he determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. But whether a particular claim falls within the coverage afforded by a liability policy is not affected by the form of the legal proceeding [or] the legal theory asserted by the injured party. The scope of the duty does not depend on the labels given to the causes of action in the third party complaint; instead it rests on whether the alleged facts or known extrinsic facts reveal a possibility that the claim may be covered by the policy.

Cunningham v. Universal Underwriters, 98 Cal.App.4th 1141, 1147-48 (2002) (citations and quotations omitted).

**The Motion**

At the outset, the court notes that the present motion to dismiss is not the appropriate procedural vehicle to determine potentially disputed issues of fact or law. In pertinent part, the limited record before the court, and the legal standard on a motion to dismiss, caution against resolving Fidelity's arguments on the present motion. Accordingly, the court denies the motion to dismiss.

In the main, the focus of Plaintiffs is on the wrongful eviction component for coverage under the "personal injury" provision, also defined as:

> c. wrongful entry into premises that a person or organization occupies or wrongful eviction of a person or organization from premises that the person or organization occupies.

(Ward Decl. Ex. "A" at p. 53; Compl. ¶ 8). The term "wrongful eviction" is not defined in the Policy. However, the Court of Appeal in Cunningham, 98 Cal.App.4th 1141, judicially construed the term wrongful eviction. The Court of Appeal applied a "commonly understood meaning of the word - an eviction requires that a person first be in actual possession of real property, and then be removed from that property." Id. at 1149. The Court of Appeal also noted that a constructive eviction claim may arise when the landlord engages in acts that render the premises unfit for occupancy for the purpose for which it was leased, or deprive the tenant of the beneficial enjoyment of the premises. Id. at 1150.

While Plaintiffs argue in hindsight that Tenants claimed they were constructively evicted from the premises, it does not appear that Tenants set forth any basis for a constructive eviction claim until April 25, 2016, when Tenants' counsel allegedly informed Plaintiffs' counsel of a potential constructive eviction claim. (Compl. Exh. C). However, it does not appear that this information was provided to Fidelity until March 10, 2017, (Compl. Exh. D), nearly three years after commencement of the lease on May 28, 2014, and almost two years after Haidinger terminated the lease effective July 11, 2015.

In short, at this point in the proceeding, the record requires further development to comprehensively address the issues presented.[1] For example, it is unclear from the authorities cited by the parties whether a constructive eviction remedy is even available when the damages sought by Tenants appear to relate solely to Haidinger's alleged material breach of the lease when he refused to sign the CUP on or about June 11, 2015. Further, as noted in Cunningham, "to invoke a constructive eviction defense or remedy, the aggrieved tenants must surrender or vacate within a reasonable time after the landlord's material interference with the lease." 98 Cal. App.4th at 1153 (quoting Friedman, et al., Cal. Practice Guide: Landlord - Tenant (The Rutter Group 2001), ¶ 7:298, p. 7-61). Here, it appears that Tenants remained in possession of the premises for almost ten months before surrendering the space.[2] Further development of the record and analysis of relevant authorities will assist the parties and court in reaching informed determinations.

In sum, the motion to dismiss is denied.

IT IS SO ORDERED.

DATED: February 2, 2018

Hon. Jeffrey T. Miller
United States District Judge

---

[1] While it is appropriate to consider materials incorporated into the complaint, see Hal Roach Studios, 896 F.2d at 1555, the court notes that neither the Complaint's allegations nor the exhibits attached to the Complaint have any evidentiary value relevant to any issue raised by the parties.

[2] The court notes that the Complaint also alleges the BMC, after terminating the lease, reinstated the lease at some point in time.