UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACK MOUNTAIN CENTER, L.P., and TIMOTHY HAIDINGER<br><br>Plaintiff,<br><br>v.<br><br>FIDELITY AND DEPOSIT COMPANY OF MARYLAND<br><br>Defendants. | CASE NO. 17cv1776 JM(JLB)<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Pursuant to Fed. R. Civ. P. 56, Plaintiffs Black Mountain Center, L.P. ("BMC"), and its president, Timothy Haidinger ("Haidinger") move for summary adjudication on the issue of whether Fidelity and Deposit Company of Maryland ("Fidelity") breached the duty to defend in the underlying state court action. Defendant Fidelity moves for summary judgment on all claims. All motions are opposed. For the reasons set forth below, the court grants Plaintiffs' motion for summary adjudication on the duty to defend and denies Fidelity's motion for summary judgment in its entirety.

## BACKGROUND

On September 1, 2017, Plaintiffs commenced this diversity bad faith insurance action by alleging two claims for breach of contract (failure to pay defense and settle-

ment costs) and a claim for tortious breach of the implied covenant of good faith and fair dealing. Plaintiffs bring this action by alleging that Fidelity wrongfully and unreasonably refused to defend them against a claim of constructive eviction. In addition to compensatory damages, Plaintiffs seek an award of punitive damages.

The following excerpts of the record are not disputed:

**The Lease**

BMC owns the Haidinger Center, a four building, 3.89 acre site located in San Diego, CA. BMC leases space to tenants for professional, retail, commercial, and light manufacturing purposes. Fidelity, a Maryland corporation, provided business and liability insurance coverage for the property. On May 28, 2014, BMC entered into a lease with Victoria DuPont and Jeff Droege ("Tenants") for the express purpose to operate a medical marijuana dispensary, and "not for any other purpose." (Plaintiffs' Exh. N, ¶1.6). The lease also contained a provision addressing regulatory issues.

> 1.10 Regulatory Issues: Tenant is in a highly regulated business which is constrained by numerous approval levels. Tenant agrees that, should Landlord receive notices from any such agencies that the building or Tenant's occupancy violates any Federal, State, or local laws, then Tenant agrees, with two weeks notice, to vacate the premises. Landlord agrees that, if Tenant is unable to obtain a license permitting it to operate its business, despite diligently applying for such license, then Tenant may terminate this lease with two weeks notice to Landlord. . . .

With respect to cancellation of the lease, Section 1.12 of the lease provides that either party could cancel the lease, prior to Tenants' occupancy of the premises, with one-month's written notice.

Prior to executing the lease, Haidinger and Tenants agreed that they could operate the dispensary upon receipt of a Conditional Use Permit ("CUP") from the City of San Diego. Haidinger also represented that he would sign the CUP, a prerequisite for the issuance of a final CUP. In November 2014, Tenants obtained the keys to the premises.

Also in November 2014, Tenants obtained a tentative CUP. After review of the conditions for the CUP, Haidinger determined that some of the CUP's conditions were unacceptable. Specifically, Haidinger objected to the indemnity and the armed security

guard provisions in the CUP and BMC's inability to obtain satisfactory insurance for the complex because of the existence of a medical marijuana dispensary. Haidinger believed that the CUP conditions materially altered the allocation of risk under the lease and "concluded that BMC could not go forward with Plaintiffs' project and could not consent to the CUP conditions." (Defendants' UMF 21). On June 5, 2015, Haidinger learned that he was unable to obtain necessary insurance (general/property liability and umbrella policies)in the event a medical marijuana dispensary or armed guards were located on the property. Apparently, neither party anticipated the onerousness of the CUP conditions.

After expending substantial time, money, and resources, on March 12, 2015, the San Diego Planning Commission approved the CUP. On June 11, 2015, DuPont met with property owner Tim Haidinger to

> discuss the required signatures for the CUP and implementing the conditions imposed by the City's Planning Commissioners. Haidinger has refused to sign the CUP and notified DuPont that he is terminating the Lease effective July 11, 2015.

(July 10, 2015 Tender Letter, Compl. Exh. A 003). Haidinger refused to sign the CUP.

On July 10, 2015, Haidinger received a demand letter from Tenants requesting the sum of $500,000 in damages or, alternatively, a revised lease that would permit them to operate a marijuana dispensary. (Plaintiffs' Exh. B). The demand letter outlined that Tenants and Haidinger entered into a lease for the operation of a medical marijuana dispensary; Haidinger represented that he would execute the CUP; Haidinger refused to sign the CUP; and Tenants incurred substantial expenses in reliance upon the representations. Id. The demand letter identified potential claims for intentional misrepresentation, interference with prospective economic advantage, and breach of contract, all arising from Haidinger's refusal to sign the CUP.

**The Policy**

Fidelity, a Maryland corporation, issued a Premier Building Owners Package Policy (the "Policy") to BMC and Mr. Haidinger, designated by policy number 2761644, and in effect between December 4, 2014 and December 4, 2015. The Policy has

3

applicable limits of $5,000,000 per occurrence or act, and a deductible of $10,000. Among other things, the Policy provided a defense and indemnity against a claim for personal injury that arises out of the ownership, maintenance or use of an insured premises as a rental property or as vacant land. The Policy provided bodily injury and property damages coverage under the premises liability provisions; and personal injury and advertising damages coverage under the personal injury and advertising injury provisions.

The parties primarily focus on the wrongful eviction provision in the Policy. The Policy also defined personal injury as follows:

> 18. Personal Injury means injury other than bodily injury arising out of one or more of the following acts:
>
> c. wrongful entry into premises that a person or organization occupies or wrongful eviction of a person or organization from premises that the person or organization occupies.

(Ward Decl. Ex. "A" at p. 53). The Policy does not define the term "wrongful eviction."

The Policy also provided the following exclusions:

> A. arising out of oral or written publication of material if done by or at the direction of any insured with knowledge of its falsity.
>
> D. arising out of fraud committed by any insured.
>
> F. caused by the willful act of any insured but sums awarded as damages because of negligence are not excluded.

(Ward Decl. Exh A).

**Fidelity's First Denial of Coverage**

On July 11, 2015, Plaintiffs' tendered the pre-suit demand to Fidelity and, on July 29, 2015, Fidelity denied the claim stating that Ms. DuPont did not base any theory of recovery on any injury arising out of any act within the definition of personal injury in the Policy. (Plaintiffs' Exh. C). The denial analyzed the claims in context of the claims alleged in the demand letter (intentional misrepresentation, interference with prospective economic advantage, and breach of contract ). The denial letter also noted that Tenants were alleging that Haidinger's breach of the lease "will result in loss of the CUP, loss of

revenue, and loss of the Property to operate what was specifically researched and chosen based on zoning and ability to meet city requirements." Id. Fidelity also indicated that the claims were barred by the personal injury, fraud, and willful act exclusions in the Policy and concluded that Tenants do "not base any theory of recovery on any injury arising out of any act within the definition of Personal Injury in the Policy. Id.

**The State Court Action**

On August 14, 2015, Tenants commenced an action against Plaintiffs in San Diego Superior Court alleging seven claims for relief: breach of contract, breach of the covenant of good faith and fair dealing, intentional misrepresentation, negligent misrepresentation, promissory fraud, intentional interference with prospective economic relations, and negligent interference with prospective economic advantage. (Plaintiffs' Exh. D). The complaint alleged that Plaintiffs denied Tenants' quiet enjoyment of the property and breached the lease when Haidinger failed to sign the CUP. The complaint further alleged that operating a medical marijuana dispensary was "the material basis for . . . entering into the Lease." (Plaintiffs' UMF 30). Tenants sought damages in the amount of $3,200,000, plus interest and attorneys' fees. After the denial of coverage, Plaintiffs funded the defense costs and, ultimately, the settlement of Tenants' claims.

**Plaintiffs' Notice of Termination of the Lease**

On June 15, 2015, Plaintiffs provided Tenants with notice that they were terminating the lease with 30 days notice pursuant to Section 1.12 of the lease. By this date, Tenants had yet to physically occupy the leased premises. Notwithstanding the lease's termination, Tenants continued to make monthly rent payments, and BMC accepted those payments.

**Tenants' Notice of Termination of the Lease**

On April, 25, 2016, Tenants provided Plaintiffs with a Notice of Termination of Lease. The letter stated, in relevant part:

> [Y]our clients have failed and refused to sign the CUP, making it impossible for Tenants to "use the premises only for a medical marijuana dispensary." Therefore, your clients have frustrated the express purpose of the Lease,

5

breached the covenant of quiet enjoyment, and constructively evicted
Tenants from the property.

The Notice stated that Plaintiffs had frustrated the express purpose of the lease, breached the covenant of quiet enjoyment, and constructively evicted Tenants from the property. (Compl. ¶ 20). The Tenants represented that they would pay rent through the end of April 2016 and surrender possession on or about May 9, 2016.

**Fidelity's Second Denial of Coverage**

On March 10, 2017, after receipt of the state court second amended complaint, Plaintiffs retendered the defense to Fidelity. The documents submitted to Fidelity include a letter from Tenants to Plaintiffs indicating that Plaintiffs' refusal to sign the CUP made "it impossible for Tenants to use the premises for a medical marijuana dispensary" and, therefore, Plaintiffs "breached the covenants of quiet enjoyment and constructively evicted Tenants from the property." (Plaintiffs' Exh. H). On April 18, 2017, Fidelity responded that neither the original demand letter nor the second amended complaint potentially seek damages covered by the Fidelity policy, including under the wrongful eviction provision. Fidelity reasoned that there wasn't anything wrong with the property when Tenants "abandoned" the premises in May 2016, and, therefore, there are no "allegations or extrinsic facts that would support an amendment to state a claim for constructive eviction." Id.

## DISCUSSION

**Legal Standards**

Summary Judgment

A motion for summary judgment shall be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Prison Legal News v. Lehman, 397 F.3d 692, 698 (9th Cir. 2005). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the file which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). There is "no express or implied requirement in Rule 56 that the moving party

6

support its motion with affidavits or other similar materials <u>negating</u> the opponent's claim." <u>Id.</u> (emphasis in original). The opposing party cannot rest on the mere allegations or denials of a pleading, but must "go beyond the pleadings and by [the party's] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Id.</u> at 324 (citation omitted). The opposing party also may not rely solely on conclusory allegations unsupported by factual data. <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989).

The court must examine the evidence in the light most favorable to the non-moving party. <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962). Any doubt as to the existence of any issue of material fact requires denial of the motion. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). On a motion for summary judgment, when "'the <u>moving party</u> bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial.'" <u>Houghton v. South</u>, 965 F.2d 1532, 1536 (9th Cir. 1992) (emphasis in original) (quoting <u>International Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1264-65 (5th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1059 (1992)).

<u>General State Law Insurance Principles</u>

Ordinary rules of contract interpretation apply to insurance contracts. The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. If the contractual language is clear and explicit, it governs. <u>Bank of the West v. Superior Court (Industrial Indemnity Co.)</u>, 2 Cal. 4th 1254 (1992). Where exclusions are clear, plain, and conspicuous, they will be enforced. <u>Malcolm v. Farmers New World Life Ins. Co.</u>, 4 Cal.App.4th 296, 3045 (1992). If the policy provision is unambiguous, i.e., has only one reasonable construction, it must be interpreted according to this plain meaning. But if a policy provision is ambiguous, the ambiguous terms are resolved in the insureds' favor, consistent with the insureds' reasonable expectations. <u>Id.</u> at 1149 (quoting <u>Safeco Ins. Co. v. Robert S.</u>, 26 Cal.4th at p. 761.)

The Court of Appeal succinctly summarized, and distinguished, the duty to defend from the duty to indemnify:

> [A]n insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement. This duty, which applies even to claims that are 'groundless, false, or fraudulent, is separate from and broader than the insurer's duty to indemnify. [T]he determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. But whether a particular claim falls within the coverage afforded by a liability policy is not affected by the form of the legal proceeding [or] the legal theory asserted by the injured party. The scope of the duty does not depend on the labels given to the causes of action in the third party complaint; instead it rests on whether the alleged facts or known extrinsic facts reveal a possibility that the claim may be covered by the policy.

Cunningham v. Universal Underwriters, 98 Cal.App.4th 1141, 1147-48 (2002) (citations and quotations omitted). The duty to defend arises when "any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy." Scottsdale Ins. Co. v. MV Transp., 36 Cal. 4th 643, 655 (2005).

**The Motion**

Both parties move for summary adjudication on the issue of whether Fidelity breached the duty to defend Plaintiffs in the underlying state court action. For the reasons set forth below, the court concludes that the facts underlying the state court action give rise to a potential for coverage under the personal injury provision of the Policy.

The Policy defined "personal injury" to mean "injury . . . arising out of . . . wrongful eviction of a person or organization from the premises." (Plaintiffs' Exh. A). Under California law, a wrongful eviction extends to both actual and constructive evictions. Legarra v. Federated Mut. Ins. Co., 35 CalApp. 4th 1472, 1484 (1995) ("An eviction is the actual or constructive dispossession of a tenant from leased premises."). Plaintiffs assert that the record establishes that Tenants set forth sufficient facts and allegations to give rise to a constructive eviction which occurs when "the landlord engages in acts that render the premises unfit for occupancy for the purpose for which it

was leased, or deprive the tenant of the beneficial enjoyment of the premises." Cunningham, 98 Cal. App. 4th at 1152. Furthermore, "[a]ny doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." Montrose Chem Corp. v. Superior Ct., 6 Cal.4th 287, 299- 300 (1993).

The factual underpinning of Tenants' claims against Plaintiffs were first brought to Fidelity's attention in the July 2015 demand letter. The letter outlined that Tenants and Haidinger entered into a lease for the operation of a medical marijuana dispensary; Haidinger represented that he would execute the preliminary CUP, a prerequisite for obtaining the final CUP; Haidinger refused to sign the CUP; Tenants were unable to operate the premises as a medical marijuana dispensary; and Tenants incurred substantial expenses in reliance upon the aforementioned representations. Id. The demand letter identified potential claims for intentional misrepresentation, interference with prospective economic advantage, and breach of contract all arising from Haidinger's refusal to sign the CUP. Fidelity then denied defense of the action, not upon the facts presented, but upon its analysis of those facts in light of claims asserted. (Plaintiffs' Exh. C). At that time, neither Fidelity nor Plaintiffs expressly addressed the wrongful eviction coverage provision provided for by the Policy.

The April 25, 2016 Notice of Termination of Lease provided, in relevant part:

> [Y]our clients have failed and refused to sign the CUP, making it impossible for Tenants to "use the premises only for a medical marijuana dispensary." Therefore, your clients have frustrated the express purpose of the Lease, breached the covenant of quiet enjoyment, and constructively evicted Tenants from the property.

Further, the March 2017 demand letter, the state court complaint, and Black Mountain's motion for summary judgment provided additional information showing that Haidinger's refusal to sign the CUP deprived tenants of the ability to operate a medical marijuana dispensary, thus denying Tenants the contemplated beneficial enjoyment of the premises. (Plaintiffs' Exhs. D, F, G).

The above facts strongly "suggest a [constructive eviction] claim potentially covered by the policy." Scottsdale, 36 Cal. 4th at 655. Therefore, Fidelity's failure to

9

provide a defense breached the contract of insurance. This conclusion does not mean that Plaintiffs are entitled to summary judgment on their claim for breach of the indemnity provision of the policy. To the contrary, genuine issues of material fact preclude summary judgment on this cause of action. For example, as noted in Cunningham, "to invoke a constructive eviction defense or remedy, the aggrieved tenants must surrender or vacate within a reasonable time after the landlord's material interference with the lease." 98 Cal. App.4th at 1153 (quoting Friedman, et al., Cal. Practice Guide: Landlord - Tenant (The Rutter Group 2001), ¶ 7:298, p. 7-61). Here, Tenants allege that Plaintiff interfered with their ability to operate the premises for its designated purpose as early as July 2015, but they did not vacate the premises until May 9, 2016. Whether the delay in vacating the premises by Tenants is reasonable under the circumstances presents a question of fact not appropriate for resolution on this motion for summary judgment (nor is it an issue before the court).

Fidelity does not expressly dispute that the underlying facts give rise to a duty to defend. Rather, Fidelity contends there is no duty to defend where coverage turns on a purely legal question. (Motion at p.13:20-21). Here, that legal question appears to be whether, under Cunningham, a constructive trust remedy is even available under the circumstances. This contention misses the mark. Whether Tenants acted within a reasonable amount of time in vacating the premises after Plaintiffs' interference with their ability to operate a medical marijuana dispensary presents a question of fact, and not an issue of law.[1] See id.

Next, Fidelity contends that the court should narrowly construe the Policy term "wrongful eviction" to require that the landlord must expel the tenants through the legal process. (Motion at p.18:19-21). This argument turns well-established landlord-tenant

---

[1] The authorities cited by Fidelity in support of this argument involve legal issues concerning insurance policy interpretation, and not factual disputes. See Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 24 (1995) (legal question concerning meaning of term "occurrence"); Griffin Dewatering Corp. v. Northern Ins. Co. of N.Y., 176 Cal. App. 4th 172, 199 (2009) (legal dispute concerning scope of the "total pollution exclusion"); Mirpad, LLC v. California Ins. Guar. Ass'n, 132 Cal. App. 4th 1058, 1068 (2005) (legal question concerning meaning of term "person" as used in policy); Scottsdale, 36 Cal. 4th at 657 (legal question concerning "advertising injury" coverage).

law on its head.  As set forth above, California landlord-tenant law recognizes that an eviction may be actual or constructive.  Moreover, Fidelity's contention that the court should narrowly construe the contested provision is contrary to California insurance law.  "[T]he coverage of a liability insurance policy must be construed broadly and its exclusions narrowly."  Strubble v. United Services Auto. Assn., 35 Cal.App.3d 498, 506 (1973).  Accordingly, this argument is not persuasive.

Finally, Fidelity contends that Plaintiffs' claims are barred under the policy exclusions for  personal injury, fraud, and willful acts (Exclusions A, D, F, respectively).  To demonstrate that an exclusion eliminates the duty to defend, the insurer must provide "conclusive evidence demonstrating that the exclusion applies. . . . Thus, an insurer that wishes to rely on an exclusion has the burden of proving, through conclusive evidence, that the exclusion applies in all possible worlds."  Atlantic Mutual Ins. Co. v. J. Lamb, Inc., 100 Cal.App.4th 1017, 1038-39 (2002).  Here, Fidelity sets forth seven allegations from the second amended complaint filed in the underlying state court action and concludes, without analysis or addressing the extensive record before the court, that all exclusions apply.  This argument falls short of showing by "conclusive evidence that  the exclusion applies in all possible worlds."  Id.  Specifically, Fidelity fails to come forward with evidence to show that these exclusions apply under the circumstances -- mere allegations taken from the second amended state court complaint fail to conclusively establish that these exclusions apply.

As the court grants summary adjudication in favor of Plaintiffs on the breach of the duty to defend claim, and against Fidelity, the remainder of Fidelity's motion for summary judgment is denied.

In sum, the court grants Plaintiffs' motion for summary adjudication on the issue

/ / /

/ / /

/ / /

of Fidelity's breach of the duty to defend. The court also denies Fidelity's motion for summary judgment in its entirety.

**IT IS SO ORDERED.**

DATED: July 26, 2018

																		_____
																		Hon. Jeffrey T. Miller
																		United States District Judge

cc: All parties